IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JADE MCCLEAN, | ) |
| and | ) |
| JAMIE DAVIS, | ) |
| Plaintiffs, | ) Cause No. 6:11-cv-03037-DGK |
| v. | ) |
| HEALTH SYSTEMS, INC., | ) |
| FORSYTH MANOR, INC., | ) |
| Defendants. | ) |

**DEFENDANT HEALTH SYSTEMS, INC. AND DEFENDANT FORSYTH MANOR INC.'S LEGAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

COME NOW Defendant Health Systems, Inc. and Defendant Forsyth Manor, Inc., by and through their undersigned counsel, and for their Legal Memorandum in Opposition to Plaintiffs' Motion for Class Certification in the above-captioned cause of action, states as follows:

1. The legal standard for class certification as clarified by the United States Supreme Court in *Wal-Mart v. Dukes* and its progeny

On June 20, 2011, the United States Supreme Court issued its landmark decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) which clarified the Rule 23 requirements in the employment context. Initially, the *Dukes* court noted that a class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Id.* at 2250. Further, the *Dukes* court clarified that a class action is not appropriate merely because the plaintiffs have all purportedly suffered

a violation of the same provision of law. *Id.* at 2551. Rather, "[w]hat matters to class certification . . . is the capacity of classwide proceedings to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original).

Furthermore, the *Dukes* court elaborated on the evidentiary standard that plaintiffs must satisfy in order to carry their burden of meeting the Rule 23 requirements: class certification goes beyond a mere pleading standard; rather, a party seeking class certification must affirmatively demonstrate compliance with the Rule 23 factors – i.e. he or she must prove that there are *in fact* sufficiently numerous parties, common questions or fact or law, etc. *Id.* This requires the Court to engage in a "rigorous analysis" of the evidence proffered by the parties to ensure that the Rule 23 prerequisites have been satisfied. *Id.*

Significantly, the *Dukes* court noted that the rigorous analysis will quite often require the Court to delve into the merits of the plaintiff's underlying claim. *Id.* at 2251-52. Indeed, class determinations generally involve considerations that are enmeshed in the factual and legal issues comprising the cause of action itself. *Id.*[1]

Thereafter, on September 22, 2011, the Eight Circuit applied the *Dukes* standard in the employment context. In *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011)(affirming the denial of class certification) the Eighth Circuit clarified that a

---

[1] Other courts have also relied upon the *Dukes* decision to likewise deny collective action certification under § 216(b). *See, e.g., MacGregor v. Farmers Ins. Exc.*, 2011 WL 2981466 at * 4 (D. S.C. 2011)(finding the *Dukes* decision to be "illuminating" and denying conditional certification where the evidence demonstrated that the employer did not have a uniform practice to perform uncompensated work, but rather it demonstrated that the alleged wrongdoing was the result of decentralized and independent actions by supervisors which was contrary to the employer's established policies); *Blaney v. Charlotte-Mecklenburg Hospital Auth.*, 2011 WL 4351631 at * 8 (W.D. N.C. 2011)("The result is that Defendant's policy requiring compensation for interrupted meal breaks was entirely dependent upon decentralized management practices to ensure its enforcement; in essence, a policy against having a formal policy.").

plaintiff's common contention must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. See also *In re Bisphenol Products Liability Litigation*, 276 F.R.D. 336, 340 (W.D. Mo. 2011)("The Court is required to conduct a "rigorous analysis" that entails looking behind the pleadings and ascertaining the nature of Plaintiffs' claims as well as the nature of the evidence.")(denying class certification).

Thus, the primary distinction between a Rule 23 class action and a § 213 collective action is the quantum of proof that a plaintiff is required to present in order to sustain his or her burden of proof. Simply put, in the event that the Court believes that the evidence in this case is insufficient to support a § 213 collective action, then Plaintiffs' request for class certification under Rule 23 is inappropriate *per se*.[2]

2. <u>A review of the case law that has developed subsequent to the parties briefing of Plaintiffs' Motion for conditional certification</u>

The law in the area of "auto-deduct" meal break cases continues to develop rapidly. The most relevant and factually analogous case to be decided in this area subsequent to the parties briefing of Plaintiff's Motion for Conditional Certification is *Blaney v. Charlotte-Mecklenburg Hospital Authority*, 2011 WL 4351631 (W.D. NC 2011).

In *Blaney* a group of nurses and nurse assistants that worked at a healthcare system comprised of thirteen (13) medical care facilities (consisting of 11,000 nurses spread over 450-departments) filed suit alleging a violation of the Fair Labor Standards

---

[2] Given the similarity of the issues involved in the class action certification issue and conditional certification issue under the FLSA, Defendants hereby incorporate by reference their Memorandum In Opposition to Plaintiffs' Motion for Conditional Certification [Doc. 139].

Act. Specifically, the plaintiffs contended that the defendant had a policy which required them to carry pagers during their lunch breaks, and that they were required to answer any pages they received during their lunch breaks for the purpose of attending to patients. During the same time period, plaintiffs alleged that defendant had a policy of automatically deducting a thirty (30) minute meal break from the employee's shift regardless of whether the employees actually received a full thirty (30) minute break.

The *Blaney* court began its analysis by noting that a policy which automatically deducts pay for meal periods is not, by itself, unlawful under the FLSA. *Id.* at * 6. The *Blaney* court noted that the manner in which the meal breaks were administered was left to the decentralized discretion of the individual units and the management staffs therein. For instance, in some units the nurses' lunch breaks were scheduled at specific times, while in other units the breaks were taken on an *ad hoc* basis whenever time permitted. *Id.* at * 7. Additionally, some units required nurses to take breaks on their unit floors, while others had no restrictions on how far nurses may go during their lunch breaks. *Id.*

Moreover, the defendant established that the only company-wide policy that was in place regarding the lunch breaks was that employees were to be provided full compensation for all hours worked. *Id.* at * 8. Also, each unit implemented different methods for entering corrections on the nurses time sheets in order to account for interrupted or missed breaks – some required forms to be filed with the unit's management, while others only required verbal requests for compensation. *Id.* The responsibility for training employees on how to account for their time when interrupted ultimately fell to unit-level management. *Id.*

The logical conclusion that the *Blaney* court drew from this evidence was that defendant's policy requiring compensation for interrupted meal breaks was entirely dependent upon decentralized management practices to ensure its enforcement; in essence, a policy against having a formal policy. *Id.* citing *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011). Indeed, the plaintiffs failed to present any evidence of an unwritten policy which discouraged full compensation for interrupted breaks, nor did they present any evidence of requests for reversals of the automatic deduction which was denied. Id. at * 9. Thus, the *Blaney* court found that "[w]hen alleged FLSA violations stem from the enforcement decisions of individual supervisors, without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate." *Id.* To wit:

> The question for each nurse or NA employed at a CHS in-patient facility will ultimately be whether they were compensated for periods actually worked at either the normal rate or overtime rate, which will require the court, and eventually a jury, to determine whether each individual plaintiff actually took lunch breaks, their frequency and duration, whether each plaintiff's supervisor advised the employee how to report worked lunch breaks, whether the employee did in fact report worked lunch breaks, how many breaks were interrupted, if any, and how many of the missed or interrupted breaks were, in fact compensated. This question in turn hinges on whether the individual's meal was compensable, which is itself a fact-intensive inquiry.

*Id.* at * 10.

Thus, the *Blaney* court concluded that "[w]here the record before the Court demonstrates that there is no common policy or scheme and instead individualized questions of fact predominate, the action is not an appropriate one for certification." *Id.*

The *Blaney* decision is not an anomaly as other cases have likewise denied requests for class or collective action treatment on similar facts. *See, e.g., Boyd v. Alutiiq Global Solutions, LLC*, 2011 WL 3511085 (N.D. Ill. 2011)(denying conditional

certification in meal break case)("Nor is there any evidence that Plaintiffs' supervisors were acting in accordance with any global plan or that those supervisors had instructed personnel at other based to shortchange themselves on their time sheets."); *Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763 (C.D. Cal. 2011)(denying class certification under Rule 23)("Plaintiffs have failed to demonstrate that Defendants had a uniform or common policy in place that "prevented" employees from taking meal and rest breaks and did not provide overtime wages throughout all California locations. . . . Furthermore, . . . substantial variability in management policy exists between the 819 phramacies because different Pharmacists-In-Charge are placed at each pharmacy location");[3] *MacGregor v. Farmers Ins. Exchange*, 2011 WL 2981466 (D.S.C. 2011)(denying conditional certification in auto deduct case)("The necessity for independent inquiries into each alleged violation makes collection action likely to hinder rather than promote judicial economy."); *Wilson v. Navika Capital Group, LLC*, 2011 WL 3020876 (S.D. Tex. 2011)(denying conditional certification for off the clock work).

The facts of this case are fundamentally indistinguishable from *Blaney*, and the same result is appropriate herein:

- Defendant Health Systems manages sixty (60) facilities which are geographically dispersed throughout the State of Missouri, and approximately 3,500 individuals are employed at the managed facilities at any given point in time. Atkin depo. at p.46.

---

[3] The *Hadjavi* court also found that adequacy of representation was lacking because the proposed class contained individuals who were responsible for scheduling employees to take their breaks, and this presented a conflict of interest issue. *Id.* at * 6 (quoting *Wagner v. Taylor*, 836 F.2d 578, 595 (D.D.C. 1987)(stating that supervisors are often inappropriate representatives of non-supervisors because there are distinctly different interests between the two groups). Of course, the converse is true as well – i.e. non-supervisors such as Plaintiffs McClean and Davis are inadequate representatives of individuals such as opt-ins Veronica Alacantar and Kathryn McKinnon who were responsible for scheduling breaks of other employees.

- The procedures for reporting a missed meal break vary from facility-to-facility, or even within departments at a given facility. Some units utilize a form to inform management of missed meal breaks, while others only require an oral report to a supervisor. Hinkle deposition at p.131-32.

- Responsibility for training employees on how to inform management of a missed or interrupted meal break was ultimately the responsibility of management at each given facility. Atkin depo. at p.69-70; 105-06.

- Defendant's policy requires compensation for all hours worked, or to be provided with an additional break in order to compensate for the interrupted or missed break. Handbook at § 8.8b.

Thus, Plaintiffs have likewise failed to present any evidence of an unwritten policy which discouraged full compensation for interrupted breaks, nor did they present any evidence of requests for reversals of the automatic deduction which was denied. Rather, at best, Plaintiffs' evidence presents isolated instances of supervisor misconduct but there is no evidence of a common policy or scheme to require employees to miss their breaks.

Moreover, individual inquiries will predominate because the court will be forced to engage in a series of "mini-trials" to determine whether each individual plaintiff actually took lunch breaks, their frequency and duration, whether each plaintiff's supervisor advised the employee how to report worked breaks, whether the employee did in fact report worked lunch breaks, how many breaks were interrupted, if any, and how many of the missed or interrupted breaks were, in fact compensated. Judicial economy would be hindered, rather than furthered, by adjudication in this manner.

As the Supreme Court admonished in *Dukes*, this case lacks the capacity to generate common *answers* apt to drive the resolution of the litigation; rather, resolution of the meal break issue will depend on the individual facts and circumstances of each plaintiff such that class certification is inappropriate.

\* \* \* \*

The cases that Plaintiffs primarily rely upon likewise do not support their position. First, *Casey v. Coventry Healthcare of Kansas, Inc.*, 2010 WL 3636140 (W.D. Mo. 2010) is easily distinguishable because it does not arise in the employer-employee context; rather, it was a class action over a health management organization imposed co-payment and coinsurance charges for the same healthcare services.

Second, *Bouaphakeo v. Tyson Foods, Inc.*, 2011 WL 3793962 (N.D. Iowa) is likewise of no help to Plaintiffs because it involved the issue of whether donning and doffing protective gear was compensable under the FLSA. If it was then all class members were entitled to compensation because they were performing the same tasks; if not, then none of them were entitled to compensation. *Id.* at \*3 ("If it is determined that the donning and doffing and/or sanitizing of the PPE constitutes "work" for which plaintiffs are entitled to compensation, then such determination is applicable to all such situated plaintiffs."). In contrast, the inquiry in this case will require an individualized examination of the frequency and duration of the breaks, whether each plaintiff's supervisor advised the employee how to report worked breaks, whether the employee did in fact report worked lunch breaks, how many breaks were interrupted, if any, and how many of the missed or interrupted breaks were, in fact compensated.

Third, *Nobles v. State Farm Mut. Automobile Ins. Co.*, 2011 WL 3794021 (W.D. Mo. 2011) is also distinguishable because plaintiffs asserted that the defendant's pay and timekeeping policy, as written, did not comply with the law. Here, however, there is nothing inherently unlawful with an auto deduct policy, rounding to the nearest quarter hour, etc. Rather, it is the *application* of these policies to the particular facts and

circumstances of the individual plaintiffs where the challenge lies.

WHEREFORE, Defendant Health Systems, Inc. and Defendant Forsyth Manor, Inc. respectfully request the Court to deny Plaintiffs' Motion for Class Certification in its entirety, and for such other and further relief and the Court deems just and proper.

Respectfully submitted,

McCARTHY, LEONARD, KAEMMERER, L.C.

By: /s/ Bryan M. Kaemmerer
Michael E. Kaemmerer, #25652MO
Brian E. McGovern, #34677MO
Kristen L. Maly, #40514MO
Bryan M. Kaemmerer, #52998MO
400 South Woods Mill Road, Suite 250
Chesterfield (St. Louis), MO 63017-3481
(314) 392-5200
(314) 392-5221 (Fax)
mkaemmerer@mlklaw.com
bmcgovern@mlklaw.com
bkaemmerer@mlklaw.com
kmaly@mlklaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of November 2011, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon the following:

Rowdy B. Meeks, Esq.
Tracey F. George, Esq.
Rowdy Meeks Legal Group LLC
4717 Grand Ave., Ste. 840
Kansas City, Missouri 64112
Rowdy.Meeks@rmlegalgroup.com
Tracey.George@rmlegalgroup.com
Attorney for Plaintiffs

/s/ Bryan M. Kaemmerer