IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JADE MCCLEAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11-03037-CV-S-DGK |
| | ) | |
| HEALTH SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER CONDITIONALLY CERTIFYING CLASS

This case arises from Plaintiffs' allegations that Defendant Health Systems, Inc. ("Health Systems"), which manages sixty Missouri nursing home facilities, unlawfully withheld wages from hourly, nonexempt employees in violation of the Fair Labor Standards Act ("FLSA"). Pending before the Court is Plaintiffs' "Motion for Conditional Collective Action Certification" (Doc. 126). Plaintiffs request that the Court conditionally certify this case as a collective action and authorize Plaintiffs to send notice of this case under § 216(b) of the FLSA to all current and former hourly, nonexempt employees who worked for nursing homes managed by Health Systems for the last three years. Plaintiffs also seek an order requiring Defendants to provide them with the names, last known address, dates of employment, job title, nursing home location, phone number(s), and email addresses for all of these employees. Having considered Plaintiffs' "Suggestions in Support of Motion for Conditional Collective Action Certification" (Doc. 127) and Defendants' "Legal Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification" (Doc. 139), the Court grants Plaintiffs' motion in part.

**Background**

There are few undisputed facts. The parties agree that Defendant Health Systems provides management and consulting services to nursing and rehabilitation centers throughout Missouri. At the time litigation commenced, Health Systems managed sixty nursing home facilities across the state. Health Systems has approximately fifty of its own employees working at its main office in Osage Beach, Missouri. At any given time, approximately 3,500 individuals are employed at all sixty facilities managed by Health Systems.

The parties disagree about the level of management and participation Defendant has with its managed facilities. Plaintiffs allege that Health Systems establishes the workplace policies and procedures for its employees and is responsible for ensuring that the employment policies and procedures comply with federal and state law through the adoption of a "Quality Assurance" process it oversees. Plaintiffs also allege that Health Systems regularly provides on-site personnel to provide training, direct the work of employees, and ensure consistency among the facilities. Plaintiffs maintain that Health Systems makes all decisions and recommendations regarding employees' compensation, including whether to grant bonuses or pay raises to hourly employees and whether to include bonuses in overtime calculations.

Health Systems, on the other hand, maintains that pursuant to its role as a consultant, it only periodically sends oversight personnel to its managed facilities to provide clinical support or financial and administrative consulting. However, no employees of Health Systems work at its managed facilities on a daily basis. According to Health Systems, employees at the managed facilities receive supervision, oversight, and training from employees of the individual facilities, not from Health Systems employees. Each managed facility does its own hiring and firing.

In its original complaint, Plaintiffs allege that Health Systems implements a uniform, system-wide policy that automatically deducts a thirty minute meal period from each employee's pay for shifts of six hours or more regardless of whether the employee actually takes a meal break or works through the meal period.

Plaintiffs also allege that Health Systems' time-keeping system is unlawful. Health Systems' managed facilities operate using the "Timestar timeclock system," which rounds each employee's work time to the nearest quarter hour. For example, if employees clock in seven minutes or less before their shift begins, their work time will be rounded to the top of the hour. If employees clock out seven minutes or less after their shift ends, their work time will be rounded down to the top of the hour. In addition to this method of calculating time, Health Systems has an express written policy prohibiting employees from clocking in more than seven minutes before their shift begins or clocking out more than seven minutes after their shift ends. According to Plaintiffs, this practice reduces employees' work hours, resulting in "Defendants not paying its employees for all time worked" (Doc. 51 at ¶ 112).

Plaintiffs' final claim is that Health Systems fails to include the amount of employees' "Retro Pay" bonuses, which are non-discretionary and given in lieu of raises, in employees' regular rate of pay for purposes of calculating overtime rates.

Named Plaintiffs Jade McClean and Jaime Davis are former hourly, nonexempt nursing home employees seeking to proceed collectively to recover wages Health Systems allegedly unlawfully withheld from them. Prior to the filing of this motion, the parties engaged in two and half months of discovery on all issues relating to Plaintiffs' motion for collective and class action certification. At the time the motion was filed, fifty-five individuals from twenty-one Health Systems-managed facilities had joined the lawsuit.

3
Case 6:11-cv-03037-DGK   Document 159   Filed 12/12/11   Page 3 of 18

**Standard**

The purpose of the FLSA is to eliminate unfair labor practices by barring "customs and contracts which allow an employer to claim all of an employee's time, while compensating him for only part of it." 29 U.S.C. § 201 et seq.; *Tennessee Coal Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944). Sections 206 and 207 of the FLSA require employers to pay employees a regular hourly rate for up to forty hours a week and overtime compensation at a rate of one and one-half times the regular rate for hours worked in excess of forty. 29 U.S.C. §§ 206, 207(a)(1). The FLSA provides a private right of action to recover damages for violations of the Act's overtime provisions. 29 U.S.C. § 216(b).

Plaintiffs seek to collectively pursue their claims against Health Systems pursuant to § 216(b), which provides that:

> An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus, unlike Rule 23 class action requirements where potential plaintiffs are included in a class if they fail to "opt out," plaintiffs in a collective action must "opt-in" to participate. *Id*.

A court may certify a case as a collective action if members of the class are "similarly situated" or raise similar legal issues regarding coverage, exemption, or nonpayment of wages or benefits. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-71 (1989); *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *3 (W.D.N.C. Sept. 16, 2011). Conditional certification is used to determine the contours of the group of employees such that notice may be given and to determine if the members described in the

pleadings are "similarly situated." Conditional certification may be granted if the Plaintiff can show common facts among the claims or can make a showing that there is a common policy of discrimination that affects all of the collective members. Plaintiffs bear the burden of establishing that they are similarly situated to other members of the proposed class. *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007).

In order to determine whether plaintiffs are "similarly situated" for purposes of conditional certification, federal district courts use a variety of standards. *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2006). The Eighth Circuit has yet to articulate a standard for conditionally certifying FLSA cases.

"A majority of the district courts in the Eighth Circuit use [a] two-step analysis." *Kautsch v. Premier Commc'n*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007). The first step is the plaintiff's motion for conditional certification (the "notice stage"), which usually occurs early in litigation and requires the court to apply a lenient evaluation standard which is "is considerably less stringent than Rule 23(b)(3) class action standards." *Id.* At the early stage, the court does not consider the merits of the plaintiff's claims, and a plaintiff can essentially sustain its burden by pleading that "the putative class members were together the victims of a single decision, policy or plan . . . ." *Id.*; *see, e.g., Robertson v. LTS Mgmt. Svcs., LLC,* 642 F. Supp. 2d 922, 925 (W.D. Mo. 2008). If a court conditionally certifies a class, potential class members are sent notice and given an opportunity to "opt-in." *Kautsch*, 504 F. Supp. 2d at 688. After discovery is complete and the court has full information, the defendant may move to decertify the class. *Id*. This second "decertification stage" requires a heightened standard of review to determine whether plaintiffs are similarly situated such that the lawsuit can proceed.

5

Many of the Missouri District Courts who utilize the "two-step" approach to analyze whether the claims of potential opt-in plaintiffs are similarly situated to those of the named plaintiffs apply the relatively lenient first step standard before discovery has commenced. *See, e.g., Lloyd*, 2008 WL 5211022, at *2; *Davis*, 408 F. Supp. 2d at 815. Accordingly, these courts rely primarily on the plaintiff's complaint and sometimes on accompanying affidavits. Some courts in the Western District of Missouri and other District Courts in the Eighth Circuit apply the lenient first step standard even after discovery has commenced. *See, e.g., Carden v. Scholastic Book Clubs, Inc.*, No. 2:10-CV-01112-NKL, 2011 WL 2680769, at *2 (W.D. Mo. July 8, 2011) (applying the lenient standard after parties had taken depositions and exchanged documents, explaining discovery was not yet complete); *Polzin v. Schreiber Foods, Inc*, No. 3:10-CV-01117-GAF, slip op. at 6 (Doc. 92) (W.D. Mo. 2011) (applying lenient standard where parties had presented for depositions and exchanged documents). On a prior occasion, this Court has also used the lenient standard after discovery has begun. *Mahmood v. Grantham Univ.*, Inc., No 10-00621-CV-W-DGK, 2011 WL 1899783, at *2 (W.D. Mo. May 19, 2011).

Other courts, however, have acknowledged the unfairness of applying this lenient approach to certification in cases where the parties have already engaged in substantial discovery. *See, e.g.*, *Creely v. HCR ManorCare, Inc.*, No. 3:09 CV 2879, 2011 WL 2259132, at *7-8 (N.D. Ohio June 9, 2011). These courts apply an "intermediate" standard of review in evaluating the appropriateness of conditional certification. *Id*. This intermediate standard is applied differently by every court. The Court in *Creely* provides a thorough discussion of the spectrum of standards courts use in applying an intermediate approach to conditionally certifying collective actions. *Id*. For example, some courts use the more stringent second-step decertification factors to determine whether there is a "similarly situated" class under the

intermediate approach. *See Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1080-81 (D. Kan. 1998) (Lungstrum, J.). Others reject the lenient standard but fail to articulate an alternative. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2002). Still others use language requiring "modest factual support for the class allegations" rather than allowing Plaintiffs to "rely upon the allegations contained in their Complaint." *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 n.1 (E.D. Mich. 2004).

Here, the parties disagree as to whether Plaintiffs need to make only a minimal showing that the proposed class members are "similarly situated" or whether they must meet a more stringent standard applied when discovery has already commenced. The Court believes the intermediate approach adopted by the *Creely* court is appropriate here given the status of the litigation. In this case, discovery has already begun. In fact, in their joint proposed scheduling order and discovery plan, the parties requested an opportunity to conduct discovery as to the similarly situated issue (Doc. 58). The Court granted this request, and the parties subsequently took twelve depositions and exchanged interrogatories and requests for production of documents. Plaintiffs have since relied on depositions and documents produced during this initial discovery as support for their "Motion for Conditional Certification." It would be inequitable to allow Plaintiffs to rely on documents generated by discovery in support of their "Motion for Conditional Certification" and then to allow Plaintiffs to proceed with the more lenient standard applied in cases where the parties have not yet begun discovery. "The Court cannot close its eyes to the amount of discovery already performed in this action. At the same time, the Court is cognizant that Plaintiffs only seek conditional certification at this point and that discovery is not complete." *Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-089-MJR, 2008 WL 2959932 (S.D. Ill. July 31, 2008). Accordingly, the Court will apply an intermediate standard of review.

In determining what this intermediate standard of review will entail, the Court looks to adopt a standard that most accurately determines whether grouping into a single proceeding "common issues of law and fact arising from the same alleged discriminatory activity" will facilitate judicial efficiency. *Hoffmann-La Roche*, 493 U.S. at 170. This standard should be measurable and should require a showing beyond the requirement that Plaintiffs need "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Davis*, 408 F. Supp. 2d at 815. At the same time, this intermediate standard should not entail the level of heightened inquiry required at the decertification stage. Accordingly, the Court adopts a standard similar to that articulated by the *Creely* court:

> [I]n order to provide some measurable standard by which to judge if Plaintiffs have made a sufficient modest "plus" factual showing . . . this Court will compare Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery to determine whether Plaintiffs have made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists.

*Creely*, 2011 WL 2259132, at *7.

The Court believes this is an appropriate intermediate standard, more stringent than the lenient first step standard, less rigorous than the second step decertification standard, and most accurately determinative of whether there exists a sound basis exists for proceeding as a collective action considering all evidence available at the time. *Bunyan*, 2008 WL 2959932, at *4.

## Discussion

Plaintiff seeks conditional certification based upon three separate allegations: (1) auto-deducting for unpaid 30-minute meals, (2) utilizing skewed rounding methods; and 3) excluding

"bonuses" from employees' regular rate of pay, thereby under-calculating employee overtime compensation. In order for Plaintiffs to prove that they are "similarly situated" to other members of the potential class, they must show that they are subject to a common plan or policy that violates the law. *Blaney*, 2011 WL 4351631, at *6. Defendants argue that Plaintiffs have not presented sufficient evidence of a common policy or plan affecting "the extremely broad class of plaintiffs that they seek to represent" (Doc. 139). The Court finds that Plaintiffs have made a sufficient showing of a common policy or plan in order to sustain their burden for conditional certification.

**A. The Court conditionally certifies the proposed class with regard to automatic meal break deductions.**

Defendants argue that Plaintiffs have not presented sufficient evidence of a common plan or policy with regard to their allegations concerning Defendants' thirty minute lunch deductions. Specifically, Defendants argue that it is their official policy to completely relieve employees of duty during their thirty minute meal break or to provide employees with compensation or an additional break if they are required to work through it (Doc. 139). If Plaintiffs are not given this break or provided with compensation in lieu of it, Defendants maintain that it is due to case-by-case determinations made at each facility, not to a company-wide policy or practice. Plaintiffs disagree, arguing that Health Systems' unlawful practice of not compensating employees for time worked during their thirty minute lunch break spans all facilities and affects all hourly employees.

Standing alone, an employer policy providing for automatic deductions for meal breaks does not violate the FLSA. *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *8 (W.D. Tenn. May 17, 2011); *Wolman v. Catholic Health Sys. of Long Island*,

*Inc.*, No. 10-CV-1326, 2011 WL 1741905, at *1 (E.D. NY May 5, 2011) ("Defendants' default timekeeping policies are not *per se* labor law violations."); *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 197 (N.D. NY 2009) ("The mere existence and implementation of a policy or practice of making automatic deductions for scheduled meal breaks in and of itself does not violate the FLSA."). To state a claim under the FLSA where an employer's formal policy is to compensate employees for all time worked, Plaintiffs also have to show that Defendants have a "common or uniform practice . . . to not follow [their] formal, written policy." *White*, 2011 WL 1883959, at *9. Thus, Defendants maintenance of a formal policy compensating employees for all hours worked during meal breaks is not sufficient to defeat Plaintiffs FLSA claim if Defendants have a common practice of requiring employees to work during lunch breaks without compensation. *See Frye v. Baptist Mem'l Hosp.*, No. CIV. 07-2708, 2010 WL 3862591, at *5 (W.D. Tenn. Sept. 27, 2010).

To determine whether Plaintiffs have sustained their burden for conditional certification under the intermediate standard, the Court compares the allegations made in their complaint with the evidence submitted after the limited discovery. In their Amended Complaint, Plaintiffs allege that Defendants required "Plaintiffs and all similarly situated employees [to] routinely . . . perform work tasks off the clock during their thirty (30) minute meal break time which is automatically deducted from their pay" (Doc. 51, ¶ 103). This conclusory allegation would be insufficient to sustain Plaintiffs' burden under the heightened intermediate standard. However, in the "Motion for Conditional Collective Action Certification," Plaintiffs present forty-four declarations from employees at twenty Health Systems-managed facilities stating that they were "routinely called away from my meal break to perform work" (Doc. 127-5). These declarations

also state that the individuals have personal knowledge, through observation, that other hourly employees at the facility also performed working during unpaid meal periods. *Id.*

Defendants argue that "plaintiffs repeatedly testified that they lacked personal knowledge about the policies for compensating employees for missed meal breaks at any facilities at which they were not personally employed" (Doc. 139, pg. 15). In support of their position, Defendants cite *Saleen v. Waste Mgmt., Inc.*, where the Court denied conditional certification because plaintiffs provided evidence from 112 declarants at 71 facilities out of a proposed class of 30,000 employees at 820 facilities. 649 F. Supp. 2d 937 (D. Minn. 2009). In denying certification, the *Saleen* Court noted that plaintiffs did not have any direct evidence of an unlawful policy that applied to all proposed class members but rather asked the Court to infer the existence of a policy from a tiny fraction of employees. Here, however, while the fraction of employees is small, it represents individuals from 1/3 of Defendants' facilities. The Court finds this significant for granting conditional collective action certification. Given that Plaintiffs produced testimony from forty-four individuals at twenty of the sixty agencies, the Court finds that Plaintiffs have provided sufficient evidence at this stage of the litigation that the putative class is similarly situated for the purposes of the FLSA. *See, e.g., Mahmood*, 2011 WL 1899783, at *2 (finding that plaintiff's presentation of ten declarations was sufficient for conditional certification of a class of all hourly employees); *Dernovish v. AT & T Operations, Inc.*, No. 09-0015-CV-W-ODS, 2010 WL 143692, at *2-3 (W.D. Mo. Jan. 12, 2010) (certifying nation-wide class of over 1,000 call center employees with dozens of job titles based upon declarations of fourteen employees holding only two of the job titles from three of the ten facilities); *Robertson*, 642 F. Supp. 2d at 924 (noting certification may be granted on basis of a single plaintiff's affidavit).

**B. The Court conditionally certifies the proposed class with regard to Defendants' time keeping rounding policy.**

Plaintiffs also contend that Defendants' timekeeping system unlawfully deprives employees of pay. The parties agree that Heath Systems utilizes a timekeeping system which employs a rounding system that rounds down to the previous quarter hour in the event that less than seven minutes have passed since the previous quarter hour and rounds up to the next quarter hour in the event that eight or more minutes have passed. However, Defendants contend that Plaintiffs have failed to prove how the rounding system operates to deprive employees of proper pay.

Defendants argue that Plaintiffs' only other "shred of evidence" in support of their request for conditional certification is Defendants' Personnel Policies and Procedures Manual, which prohibits an employee from clocking in more than seven minutes prior to their scheduled start time and more than seven minutes after their scheduled end time (Doc. 127-4, pg. 19). Because Plaintiffs offer no evidence that this policy is strictly followed, Defendants argue they have failed to sustain their burden. Defendants also argue that even strict application of this policy would not preclude time records from evening out over time where an employee clocks out less than seven minutes before the end of her shift or more than eight minutes before the beginning of her shift. According to Defendants, "It is entirely possible that the plaintiff clocked in 8-minutes before the beginning of the shift (which means that their time would be rounded back to the prior quarter hour mark and they would benefit from the rounding practice)."

The Court does not find this argument compelling. At this point, Plaintiffs need not produce significant evidence of how the rounding practice operates in practice. Rather, it is sufficient that they present evidence of a common policy or plan affecting the class of plaintiffs

12
Case 6:11-cv-03037-DGK   Document 159   Filed 12/12/11   Page 12 of 18

that they seek to represent. Here, Plaintiffs have shown that employees are subject to a common timekeeping system, and, that as a condition of their employment, they have signed a policy agreeing not to clock in more than seven minutes prior to the start of their work and no later than seven minutes after the designated end time of their work. Plaintiffs have also produced evidence, including time punch records from one managed facility, that the rounding policy is followed and could potentially deprive employees of pay for their actual time worked. While Defendants argue that the rounding policy could benefit employees, there is no evidence that this occurred and it was, in fact, explicitly prohibited by Defendants' policy. Therefore, the Court finds that Plaintiffs have provided more than mere conclusory allegations that Defendants maintain a rounding practice that could unfairly deprive employees of pay for time worked.

**C. The Court conditionally certifies the proposed class with regard to Defendants' "Retro Pay" bonuses.**

Plaintiffs' third and final claim is that Defendants pay non-discretionary "Retro Pay" bonuses to hourly employees in lieu of raises, thereby failing to include the bonus money in employees' rate of pay for purposes of calculating overtime. In support of this claim, Plaintiffs reference an excerpt from the deposition of Health Systems General Counsel, Scott Hinkle, and Memorandums from Tom Hudspeth, Health Systems CFO. Defendants argue that Scott Hinkle's deposition does not support Plaintiffs' contention that Health Systems does not include the bonus money in calculating employees' regular rates of pay:

> Q. Do you want to – are you prepared to acknowledge that retro pay is not incorporated into employees' regular rate of pay for purposes of calculating overtime?
>
> A. Again, I can't answer that. That would be Diana Adkin[], as to whether it was calculated in there. What I can tell you is that what the intent was and what it is, is it's a bonus calculation.

13

(Deposition of Scott Hinkle, Doc. 127-3, p.25). While Mr. Hinkle's testimony may not be definitive on this topic, his answer that Health Systems' intent was to make the pay a "bonus" suggests that the money was not included in employees' base rate of pay. In addition, Plaintiffs' deposition of Diana Atkin confirms that the bonuses were not included in employees' rates of pay:

> Q: Who at HSI decides whether or not to include those bonuses into the overtime pay calculations?
>
> A: I don't know if that's necessary a decision. I mean it's a bonus. So it was not included, as bonuses don't have to be.

(Deposition of Diana Atkin, Doc. 139-2).

Defendants also argue that Plaintiffs' Declarations contain no allegations that Plaintiffs worked overtime during any work week. However, this error is not fatal to Plaintiffs' case. Plaintiffs have made the most important showing that the policy exists and is applied uniformly to all hourly employees. For purposes of conditional certification only, the Court is willing to accept Plaintiff's proposed inference that some of the approximately 3,500 employees worked overtime hours between 2009 and 2011. Thus, the Court finds Plaintiffs have alleged sufficient facts, beyond those asserted in their initial complaint for relief, to sustain their burden for conditional collective action certification on this issue.

### D. The proposed class shall include all hourly, non-exempt employees at nursing facilities managed by Health Systems.

Defendants request that if conditional certification is granted, the Court limit the conditionally certified class to employees who were directly involved in resident care because the justification for working through meal breaks is due to the necessity of providing patient care. *See Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134 (W.D. NY

14
Case 6:11-cv-03037-DGK   Document 159   Filed 12/12/11   Page 14 of 18

Oct. 21, 2009). This would effectively exclude kitchen, housekeeping, maintenance, and administrative personnel. In support of this request, Defendants point to statements of several opt-in plaintiffs who note that the reason they were required to work through meal breaks was due to patient care activities. However, Plaintiffs have provided declarations from cooks, dietary aides, and other staff not working directly with residents, who maintain that they were required to work through lunch without compensation. Accordingly, the Court declines to limit the proposed class at this time.

Defendants also request that the Court exclude supervisory staff including Charge Nurses and Health Supervisors from Plaintiffs' claim regarding the automatic meal deductions. Defendants argue that there is an inherent conflict in a proposed FLSA collective action which includes both supervisors who are responsible for ensuring that employees receive their full, uninterrupted meal break, and the employees whom they supervise. *See*, *e.g.*, *Ellerd v. County of Los Angeles*, No. CV 08-4289 CAS, 2009 WL 982077 (C.D. Cal. April 9, 2009) ("The Court concludes that conditional certification of a collective action is not appropriate due to the conflict between the plaintiff social workers and their supervisors.").

The Court agrees in theory. For members of the class to demonstrate that they are entitled to overtime compensation for "off the clock" hours worked, they must necessarily show that their supervisors violated Health Systems' policies or the law in not ensuring that they took meal breaks or were compensated for them. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1315 (M.D. Ala. 2002) ("Because the court finds that the job duties of foremen and the crewmen are dissimilar, and that there is an inherent conflict between the two groups, the court concludes that crewmen should be excluded from a conditionally certified class."); *see also Tolentino v. C & J*

*Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 651 (S.D. Tex. 2010) (finding supervisors were not similarly situated to other plaintiffs).

For example, Defendants assert that Charge Nurses and Health Supervisors are responsible for scheduling meal breaks for the employees they supervise and ensuring that the employees receive their full break time (Doc. 139, Ex. 5). If entitlement to relief requires class members to show that they did not receive their full break time, class members will necessarily have to show that their supervisors did not properly ensure that this break time was given or compensated. Thus, proving an element of some class members' claims could subject other members to discipline for violating the law or company policies. However, the Court finds that Defendants' have not made a sufficient showing that it was the job duty of the Charge Nurses or Health Supervisors to ensure that they employees they supervised took a full, uninterrupted meal break. In addition, because Charge Nurses and Health Supervisors are entitled to receive notice regarding Plaintiffs' other two claims against Health Systems, there is no reason to exclude them from the class that will receive notice at this time.

Finally, Defendants argue that employees at the three unionized facilities Health Systems manages must be excluded from the scope of the proposed class because the terms and conditions of their employment are governed by a separate bargaining agreement. These employees, Defendants maintain, have selected the union as the exclusive bargaining representative regarding the terms and conditions of their employment and must use the union business representative to assist them in their grievance and arbitration process. Defendants cite only one case in support of this proposition, and in it the Plaintiffs, not the court seek to exclude the unionized facilities. *See*, *e.g.*, *Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL 1659381 (E.D. Mich. 2011) (seeking to certify a class consisting of "[a]ll persons employed within the

three years preceding the filing of this action, on a non-exempt, hourly basis, whose pay was subject to an automatic 30 minute meal period deduction, and whose employment with Defendants was not governed by a collective bargaining agreement"). In addition, Defendants fail to provide any evidence regarding these collective bargaining agreements. Thus, the Court declines to limit the proposed class in this way at this time.

### E. The Court approves the proposed Notice and Consent to potential class members.

Plaintiffs' final request is that the Court approve notice as drafted in Exhibit 12 to be sent to the putative class defined as: "All current and former hourly employees of HSI-managed facilities who were employed during the last three years" (Doc. 127). For the reasons stated above, the Court grants Plaintiffs' request in part. The Court approves Plaintiffs' notice as drafted in Exhibit 12. All current and former hourly employees of Health Systems who were employed during the last three years shall receive notice as submitted in Exhibit 12.

Because the benefits of a collective action depend on "employees receiving accurate and timely notice concerning the pendency of the collective action," the Court also orders Health Systems to conspicuously post the notice in the break rooms of each of the facilities it manages until the opt-in period closes. The Court also authorizes Plaintiffs to disseminate notice to the affected employees at their last known mailing address. To further this process and more effectively facilitate notice to potential plaintiffs, the Court orders Health Systems to provide Plaintiffs with a computer-readable data file containing the names, addresses, dates of employment, job title, facility location, and phone numbers of the class within twenty days from the date of this Order. Persons receiving notice will have ninety days after the mailing of the Court-authorized notice to post-mark their consent forms to join the case.

### Conclusion

Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche*, 493 U.S. at 170. For the reasons stated herein, Plaintiffs' "Motion for Conditional Collective Action Certification" is granted in part. This case is conditionally certified to proceed as a collective action, with the proposed class to include all current and former hourly employees of Health Systems-managed facilities who were employed in the last three years. Defendants shall provide Plaintiffs with a computer-readable file containing the names, addresses, dates of employment, job titles, facility locations, and telephone numbers for the proposed class within twenty days from the issuance of this order.

**IT IS SO ORDERED.**

Date: December 12, 2011          /s/ Greg Kays
                                 GREG KAYS, JUDGE
                                 UNITED STATES DISTRICT COURT