**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JADE MCCLEAN, et al.,** | ) | |
| | ) | |
| On Behalf of Themselves | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 6:11-cv-03037-DGK |
| vs. | ) | |
| | ) | |
| **HEALTH SYSTEMS, INC., et al** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Plaintiffs Jade McClean and Jamie Davis, on behalf of themselves and all others similarly situated, respectfully submit this Reply in support of their Motion to Enforce Settlement Agreement. Defendants wholly lack any argument to escape the Parties' settlement entered months ago. This Court, therefore, should grant Plaintiffs' Motion to Enforce and order Defendants to timely execute settlement documents so this Court can preliminarily approve the settlement.

INTRODUCTION

The Parties unequivocally agreed to settle this case on July 20, 2012. The Parties then notified the Court of the settlement and later confirmed the settlement in two Status Reports filed with this Court. (Doc. 210-211). In their Opposition brief, Defendants do not even contest that the Parties agreed on all material settlement terms in the July 20th "Term Sheet" email. (Doc. 216, Exhibit 1 at ¶ 3, Attachment B). Further, Defendants do not (and cannot) explain how they joined in one Joint Status Report (Doc. 210) and did not object to the second Status Report (Doc.

211), both of which confirm the Parties "have agreed to settle this" case. The only reasonable conclusion is that the Parties have reached a settlement agreement this Court should enforce.

The only two issues Defendants offer as grounds to rescind the Settlement Agreement are (1) Defendants' purported unilateral mistake of law regarding the allowable scope of an FLSA release, and (2) Defendants' refusal to inform class members of their estimated settlement amount in their respective class notice and claim forms. Neither of these arguments, however, impacts the settlement's enforceability. First, pursuant to well-settled Missouri contract law, Defendants' purported unilateral mistake of law cannot serve as grounds to rescind a settlement agreement. Defendants cannot hide behind their claim that they now want an illegal FLSA release as a reason to void the settlement. Second, Defendants' argument that the settlement is void because the Parties have yet to agree on the content of the class notice is ludicrous. The precise information to be included on the notice and claim form is an ancillary procedural issue—not a material settlement term—for this Court to decide separate and apart from the enforceability of the Settlement Agreement. Further, Defendants drafted the Term Sheet which does not include the notice and claim form contents.

Consequently, as these are the only two issues Defendants can manufacture as standing between the Parties and settlement, and neither is grounds to rescind the settlement, this Court should enforce the Parties' Settlement Agreement.

I.      **DEFENDANTS' PURPORTED UNILATERAL MISTAKE OF LAW REGARDING THE SCOPE OF THE RELEASE CANNOT RENDER THE SETTLEMENT AGREEMENT UNENFORCEABLE.**

     **A. Defendants' Purported Mistake Of Law Is No Defense To An Enforceable Missouri Contract.**

It is absolutely remarkable that Defendants' representative, Missouri-licensed attorney B. Scott Hinkle, who was at all times further represented by a competent law firm of attorneys skilled in defending and resolving FLSA class and collective actions, claims to have mistaken the law regarding the allowable scope of FLSA settlement releases. Even accepting this argument as true, Defendants' purported unilateral mistake of law is not grounds to rescind the Parties' settlement agreement.

It is well-settled Missouri contract law that a party's purported mistake of law has no impact on an agreement's enforceability. *See, e.g., Thompson v. Volini*, 849 S.W.2d 48, 50-51 (Mo. App. W.D. 1993) (citing *Hysinger v. Heeney*, 785 S.W.2d 619, 624-45 (Mo. App. 1990)). This case is similar to *Thompson*, in which the defendants, a doctor and his medical malpractice insurer, sought to avoid their own agreement to extend the statute of limitations, claiming they did not realize at the time of the agreement that the statute of limitations had already expired. *See id.* at 49-50. The Missouri Court of Appeals held this "mistake of law" as to when the statute of limitations expired could not obviate the agreement to toll the statute of limitations. *See id.* at 50-51. The Court reasoned that the insurance company should have investigated the running of the statute of limitations before drafting the terms and sending them to the plaintiffs:

> It has often been stated that there can be no relief against mistake when the party had within his reach the means of ascertaining the true state of facts, and without being induced thereto by the other party, neglected to avail himself of his opportunities of information.

*Id.* at 51 (quoting *Hysinger*, 785 S.W.2d at 625).

In this case, Defendants claim, "No one relayed to Mr. Hinkle that the scope of the release under the FLSA would be narrower than the release of all other claims." (Doc. 219, at 3). And, Defendants further claim their awareness "that, as a matter of law, the 'opt-in' provisions of the FLSA precluded an individual from releasing their claims under that statute unless he or she affirmatively opts-in to the settlement" did not come until after settlement discussions. *Id.* However, even if true, [1] Mr. Hinkle's purported unilateral mistake of law has no impact on the parties' settlement.

As in *Thompson*, Mr. Hinkle had full access to the law on allowable FLSA releases and full access to counsel skilled in FLSA collective action defense, yet he "neglected to avail himself of his opportunities of information." *Id.*   As in *Thompson*, Defendants' own counsel drafted the July 20, 2012 Term Sheet, which makes no mention of any release, let alone an illegal release of FLSA claims.  As the Court in *Thompson* explained,

> Taking into consideration the sophistication of the parties as to knowledge of the law of limitations or actions against health care providers, no facts point to the court invoking equitable principles to set aside the agreement.  This case involves an arms length transaction, prepared by the side seeking rescission.  [Defendants representatives] engage in the business of writing malpractice insurance in Missouri.  As such, this court cannot let the company rely on its naiveté because it denies knowledge of the law.

*Id.* at 51 (internal citations omitted).

All of Defendants many attorneys are or should be aware of the legally allowable scope of FLSA settlement releases.  Defendants cannot simply bury their heads in the sand and then claim not to have known FLSA law in an effort to avoid the parties' enforceable settlement

---

[1] The timing of events shows Mr. Hinkle's claims are not credible.  Mr. Hinkle claims he became aware of the release issue on "approximately August 23, 2012." *See* Doc. 220, Ex. 1, p. 2, 6.  However, on September 10, 2012 (some 18 days later), Plaintiffs filed a Status Report stating the Parties had settled this case.  Defendants never objected or responded to this.  Further, this Court ordered Defendants to file a Status Report on or before September 27, 2012.  Doc. 212.  Defendants ignored this Court's order and failed to do so, even though if you believe Defendants, Mr. Hinkle was well aware of this purported release issue weeks before this filing deadline.  Why would Defendants repeatedly fail to say something if this release issue was truly a problem?

4

agreement. Any such mistake of law in that regard cannot void the parties' Settlement Agreement. This cannot be the law or any party at anytime could simply escape settlement by claiming that he or she did not understand the law at the time he or she entered into the settlement agreement.

## B. Even If Unilateral Mistake Of Law Were A Defense, The Scope Of The Release Is Not A Material Term Impeding The Parties' Settlement.

Defendants' apparent failure to communicate with their counsel or to perform independent research regarding the legally allowable scope of an FLSA release reveals that this was never a vital, material settlement term as Mr. Hinkle now insists. If this was the driving consideration for settlement, beginning as far back as the parties' July 12, 2012 mediation, Defendants would have made at least some effort to confirm their understanding of the law, but they did not. And, if the scope of the release were truly a vital settlement term, it would certainly have been included in the parties' July 20, 2012 Term Sheet—which Defendants' own counsel drafted—but it was not.

Indeed, all the material terms to the parties' settlement agreement were set forth in detail in their itemized July 20, 2012 Term Sheet. (Doc. 216, Exh. 1, at ¶ 3, Attachment B). These material terms were agreed upon after a full day of mediation and significant back-and-forth negotiations in the days following. Throughout these discussions and emails, including in the Term Sheet that Defendants' own counsel drafted, Defendants never one time indicated settlement was conditioned on a full release from everyone who does not affirmatively opt-out of this case—an illegal release under the FLSA. Notably, the Term Sheet makes no mention of any release at all as a material term. That is because it was an apparent afterthought, completely immaterial to settlement.

And now, more than four months after the Parties settled this case (and jointly advised the Court as much), Defendants seek to avoid the settlement agreement claiming a unilateral mistake of law regarding a term so immaterial it was neither researched, discussed with counsel, nor included on the Term Sheet. Accordingly, even if mistake of law were a defense—though it is not—any purported mistake relates to an issue which by all appearances was immaterial at the time of settlement, and this Court should therefore enforce the settlement agreement. If this Court accepts Defendants' argument, then any party could excuse himself or herself from any settlement merely by claiming he or she "misunderstood" the scope of the release and/or that an illegal release is necessary to settle the case. This cannot be the law for obvious reasons.

## C. The Cases Defendants Cite Regarding "Mistake" Are Inapposite.

Defendants mistakenly rely on cases involving specific performance of land contracts, which have no bearing on the enforceability the parties' settlement agreement in this case. (Doc. 219, at 1-2) (citing *Frederich v. Union Elec. Light & Power Co.*, 82 S.W.2d 79 (1935), *Eisenbeis v. Shillington*, 159 S.W.2d 641 (Mo. 1941), and *Pub. Water Supply Dist. of Pemiscot County No. 1 v. Fowlkes*, 407 S.W.2d 642, 649-50 (Mo. Ct. App. 1966)). Though a unilateral mistake of fact can be sufficient to avoid specific performance of a land contract in limited circumstances, it is rarely sufficient to rescind a contract at law.[2]

In fact, in *Fowlkes*, the Missouri Court of Appeals acknowledges that "[t]he mistake of fact sufficient to justify refusal of specific performance need not be such as would avoid a contract at law, or even such as would justify rescission or reformation of the contract."

---

[2] It is worthy of reminder that Mr. Hinkle claims a mistake of law, not a mistake of fact. In *Thompson*, the Court recognized and refused defendants' identical attempts to recharacterize their mistake of law as one of fact. 849 S.W.2d at 51. However, Mr. Hinkle unequivocally claims he was not aware that "as a matter of law" the FLSA limited the scope of release until after the settlement. (Doc. 219, at 3). Defendants do not identify any facts of which they were unaware. Nonetheless, the "mistake of fact" cases on which Defendants rely are unavailing.

6

*Fowlkes*, 407 S.W.2d at 649-50. Simply claiming a "misunderstanding" of the law, as Mr. Hinkle does here, is not enough to rescind the parties' settlement agreement.

Missouri courts have afforded little sympathy to a party who "did not understand the consequences of an act." *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 314 (Mo. Ct. App. 2006). (quoting *Liquidation of Prof'l Med. Ins. Co. v. Lakin*, 88 S.W.3d 471, 481 (Mo. App. W.D. 2002)). "Where the mistake has resulted solely from the negligence or inattention of the party seeking relief, and the other party is without fault, relief should not be granted absent unusual circumstances which would make enforcement of the agreement unjust." *Id.* Absent "fraud, misrepresentation or other unfair dealing a release is not invalid because of a unilateral mistake." *Id.* Notably, Defendants offer no such argument or evidence.

Even if specific performance cases involving land contracts were relevant here, the cases Defendants' cite are distinguishable and unpersuasive. For example, Defendants reliance on *Frederich v. Union Elec. Light & Power Co.*, 82 S.W.2d 79, 84 (1935), for the proposition that a "misunderstanding" is grounds for rescinding a contract is entirely misplaced. Unlike in this case, *Frederich* involved a unilateral mistake of fact—not a mistake of law—by the seller of easement rights, and the mistake was blatantly obvious to the purchaser who attempted to take advantage of the seller's apparent misunderstanding regarding the land rights he was giving up. *See id.* at 84-6. In that case, the Court refused to grant specific performance of the land rights purchase, holding it would be inequitable under the circumstances to aid the purchaser in taking advantage of the seller's obvious mistake. *See id.*

This case is not like *Frederich* in that Plaintiffs learned for the first time on December 10, 2012, in Defendants' Opposition to Motion to Enforce, that Mr. Hinkle claimed a unilateral mistake of FLSA law. This purported mistake was one of law not fact, and there is no evidence

as in *Frederich* that Plaintiffs engaged in any bad faith or attempted to capitalize on this purported mistake, of which they had no knowledge.

Notably, the Court in *Frederich* recognized that contract rescission generally requires evidence of mutual—not unilateral—mistake. *See id.* at 86 ("There are exceptions made to these general rules in cases where the mistake of one party is either known to the other party or is so obvious, under the circumstances, that it must have been known to him, and the mistake concerns a matter so vital that it can be said that the parties, because of miscalculation or false information, never actually agreed to the same proposition.") However, in this case, Plaintiffs had no knowledge or reason to know of Mr. Hinkle's misunderstanding of FLSA law—certainly given that he was represented at all times by skilled FLSA attorneys—and there was no miscalculation or false information provided to Mr. Hinkle: at best, he just failed to ask his own counsel.

Equally unavailing is Defendants' reliance on *Best v. Culhane*, 677 S.W.2d 390, 395 (Mo. Ct. App. 1984), yet another case involving specific performance of a land purchase agreement. In *Best*, the Court denied specific performance where there was substantial evidence of fraud on the part of the seller in grossly overstating the amount of tillable land and evidence of *mutual* mistake of fact. *See id.* And, of course, there is no argument or evidence of either fraud or mutual mistake in this case.

Accordingly, as Defendants offer no relevant legal authority to the contrary, this Court should enforce the Parties' settlement agreement. And, Plaintiffs will deliver a full release of their wage claims to the extent allowable under the FLSA and Missouri state wage and hour law (which Defendants have understood since the Parties agreed to settle this case).

## II. THE FORM OF THE NOTICE AND CLAIM FORM ARE ANCILLARY PROCEDURAL ISSUES IMMATERIAL TO SETTLEMENT AND ARE FOR THIS COURT TO DECIDE.

The Parties seemingly agree there was never an agreement regarding the information to be included in the settlement notice and claim form. In fact, the parties' Term Sheet makes no mention of the form of the settlement notice or the claim form. That is because this is an ancillary procedural issue completely immaterial to the settlement agreement and one that is traditionally for this Court to decide. *See* MCLAUGHLIN ON CLASS ACTIONS, § 6:17 (9th ed. 2012) ("While due process and Rule 23(e) require notice of a settlement be given, the content and form of that notice are left to the Court's discretion") (internal citations omitted).

Despite what Defendants suggest, Plaintiffs do not ask this Court to force onto Defendants a settlement term to which they never agreed. On the contrary, Plaintiffs maintain that any dispute the parties have regarding the settlement notice and claim form are procedural issues for this Court to decide—separate and apart from enforcing the settlement agreement.

Plaintiffs are prepared to separately brief this ancillary issue and intend to abide by this Court's determination on the appropriate notice and claim form.[3] Nonetheless, Defendants' disagreement over this issue is not grounds to void the settlement, especially when Defendants themselves seem to concede it is non-material as it was never agreed upon.

---

[3] Remarkably, Defendants abandon their prior and only argument that it is an "undue burden" to include each class member's estimated settlement amount in his/her respective notice and claim forms because it is too costly. (Doc. 214, at 2). Given that is in fact <u>more costly</u> (an additional $97,000) to require class members to call the administrator to determine their settlement amount, the only remaining reason for withholding this information is to discourage participation in this settlement. And, given that each class member must weigh all available information to decide whether to return the claim form or, instead, potentially release Missouri wage and common law claims, it makes no sense to deprive them of this information when it is readily ascertainable.

**III.**    **AN EVIDENTIARY HEARING IS UNNECESSARY BECAUSE THERE ARE NO DISPUTED FACTUAL ISSUES PRECLUDING THE SETTLEMENT'S ENFORCEABILITY.**

There are no factual disputes surrounding the Parties' settlement agreement which would necessitate a hearing prior to enforcement.  The only two issues include: (1) Defendants' purported unilateral mistake of law, which requires no factual determination and is no defense to this valid, Missouri contract even fully accepting Mr. Hinkle's declaration testimony as true; and (2) the form of the settlement notice and claim form, which all parties agree was never a part of the settlement and is an ancillary procedural issue for this Court to decide separate and apart from enforceability.  Accordingly, there are no factual disputes impeding settlement and thus, a hearing is unnecessary and will only further delay this case.

Where, as here, there are no factual disputes impeding settlement, this Court need not hold an evidentiary hearing prior to enforcing the agreement.  *See TCBY Sys., Inc. v. EGB Associates, Inc*., 2 F.3d 288, 291 (8th Cir. 1993) (affirming District Court's enforcement of settlement agreement without an evidentiary hearing where the dispute involved one party's "misunderstanding" of the law).  As a general rule, a "district court must hold an evidentiary hearing ... when there is a substantial factual dispute concerning the existence or terms of the settlement agreement...."  *Id.* (quoting *Gatz v. Southwest Bank*, 836 F.2d 1089, 1095 (8th Cir. 1988)).  However, there is no such factual dispute in this case.

Instead, this case is remarkably similar to *TCBY*, in which the Defendants sought to avoid the settlement agreement, claiming a "misunderstanding" as to the legal effect of a dismissal with prejudice (e.g., the scope of the release).  *See id.*  In *TCBY*, the District Court enforced the agreement without hearing, and the Eighth Circuit affirmed that decision, explaining:

> [Defendant's] misunderstanding as to the legal effect of a dismissal with prejudice does not warrant a hearing. Nor is the misunderstanding as to the legal effect of

the dismissal sufficient to void the agreement to dismiss the complaint with prejudice.

*Id.* (internal citations omitted). Here, as in *TCBY*, Defendants' purported misunderstanding of law regarding the scope of an allowable FLSA release does not warrant a hearing and is insufficient to void the parties' settlement agreement.

Consequently, all that remains is for this Court to apply well-settled, Missouri contract law to enforce the parties' agreement and compel Defendants to execute settlement documents reflecting this agreement.[4] And, consistent with *TCBY*, Plaintiffs are not asking the Court to compel Defendants to agree to any terms not previously agreed to by the Parties. There is no dispute that the parties agreed to all of the terms set forth in the parties' July 20, 2012 Term Sheet. As such, Plaintiffs request an order enforcing the settlement terms set forth in the Term Sheet and compelling Defendants to confer and execute documents memorializing those terms.

<u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request that this Court issue an order which confirms the Parties' settlement, requires Defendants to timely execute settlement documents memorializing the terms set forth in the July 20, 2012 Term Sheet, sets a date for the Parties to seek preliminary approval of the settlement, and for such other relief as this Court deems appropriate.

Respectfully submitted,

**ROWDY MEEKS LEGAL GROUP LLC**

*/s/ Tracey F. George*
Rowdy B. Meeks, MO #48349
Tracey F. George, MO #52361
**Rowdy Meeks Legal Group LLC**
435 Nichols Rd, Suite 200

---

[4] Where a Court decides a valid settlement agreement exists, it may order the parties to execute a written agreement as a species of specific performance. *See, e.g., Miess v. Port City Trucking, Inc.*, 2012 WL 401050, at *3 (E.D. Mo. Feb. 8, 2012) (citing *Kenney v. Vansittert*, 277 S.W.3d 713, 722 (Mo. Ct. App. 2008).

11

Kansas City, Missouri 64112
Tel: (816) 977-2740
Fax: (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
www.rmlegalgroup.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically filed this 21st

day of December, 2012, with the Clerk of Court and therefore served via the Court's electronic

filing system on the following counsel of record:

Michael E. Kaemmerer
Brian E. McGovern
Kristen L. Maly
Bryan M. Kaemmerer
400 South Woods Mill Road, Suite 250
Chesterfield, MO 63017-3481
(314) 392-5200
(314) 392-5221 (fax)
mkaemmerer@mlklaw.com
bmcgovern@mlklaw.com
kmaly@mlklaw.com
bkaemmerer@mlklaw.com

*/s/ Tracey F. George*
**ATTORNEYS FOR PLAINTIFFS**

12