IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

JADE MCCLEAN, et al., )
)
On Behalf of Themselves )
All Others Similarly Situated, )
)
    Plaintiffs, )
) Case No.: 6:11-cv-03037-DGK
vs. )
)
HEALTH SYSTEMS, INC., et al )
)
    Defendants. )

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL FILING
REGARDING SETTLEMENT**

Plaintiffs state as follows in reply to Defendants' Response to the Court's February 6, 2013 Minute Sheet (Doc. 228) (the "Supplemental Response"):

INTRODUCTION

This Court stated that the Parties have reached a settlement at the end of the February 6th evidentiary hearing.[1] The Parties discussed three issues at the hearing. First, Plaintiffs and Defendants agree that they have fully resolved the "virtual fund" issue. Second, this Court was crystal clear that it will dictate and supervise the settlement notice that putative class members receive. Third, all Parties, as well as this Court, agreed on the FLSA law which applies to this case: only those claimants who affirmatively opt-in to this case may release their FLSA claims. Thus, there is no dispute about any of these issues.

---

[1] Interestingly, Defendants appeared at the evidentiary hearing through counsel who did not attend the Parties' mediation and who thus lacks any personal knowledge of what occurred during the mediation.

Defendants, however, still seek to avoid the obvious settlement here by claiming that their in-house counsel understood that Defendants could receive an illegal, class-wide FLSA release. Not only does this not make sense given the Parties' Term Sheet and repeated representations to this Court that this case has settled, Defendants' in-house counsel supposed misunderstanding is, at very best, a unilateral mistake of basic FLSA law which Missouri courts hold cannot overturn an agreement to settle. *See, e.g., Thompson v. Volini*, 849 S.W.2d 48, 50-51 (Mo. App. W.D. 1993) (citing *Hysinger v. Heeney*, 785 S.W.2d 619, 624-45 (Mo. App. 1990)).

At the conclusion of the hearing, this Court stated Defendants could submit limited additional exhibits and briefing on the Parties' settlement. Defendants' Supplemental Response changes nothing because, like their previous filings, it contains nothing which undermines the Parties' valid, enforceable settlement agreement. Instead, Defendants offer the following: (1) four exhibits that contain the Parties' emails exchanging drafts of the formal settlement agreement, which memorialize the material terms set forth in the July 20 Term Sheet and negotiating other ancillary items, and (2) argument regarding Defendants' new mandate that Plaintiffs' attorneys' fees be held in escrow to insure against Health Systems' risk of future lawsuits. Defendants' supplemental items have no impact whatsoever on the Parties' valid, enforceable settlement agreement. Accordingly, Plaintiffs request this Court issue an order granting Plaintiffs' Motion to Enforce Settlement Agreement.

ARGUMENT

I. <u>The Parties' Draft Settlement Documents Prove The Parties Reached Settlement On All Materials Terms As Set Forth In Their July 20 Term Sheet</u>.

The exhibits Defendants attach to their Supplemental Response reveal the Parties reached a settlement agreement on all material terms and then set out to negotiate several minor ancillary

2

items. The law is clear that even if the Parties leave some minor details for counsel to work out through further negotiation, a legal, valid settlement agreement still exists. *See, e.g., Seaton v. Freeman Health Sys.*, 05-5047-CV-SW-FJG, 2006 WL 3360386, at *2 (W.D. Mo. Nov. 20, 2006) (enforcing the settlement agreement and holding the parties reached an agreement on all essential terms even though some details, including the scope of the release, were left for further negotiation) (citing *Sheng v. Starkey Laboratories*, 117 F. 3d at 1083 (8th Cir. 1997)).

In fact, it is in these draft documents the Parties exchanged in the weeks following settlement that the parties incorporated the material terms negotiated by Health Systems' own attorney, Brian McGovern, who himself drafted the July 20 Terms Sheet. And, notably, not one time in any of the emails Defendants submit as supplemental exhibits did Mr. McGovern or any other Health Systems attorney deny that the Parties had reached a valid, enforceable settlement agreement. Indeed, this is why the Parties represented to this Court on multiple occasions that this case had settled. Defendants have not and cannot offer any facts or law which allows them to escape the Parties' valid agreement to settle. *See, e.g., Faith Satellite Radio, LLC v. Lutheran Church Missouri Synod et al*, 2012 WL 5948916 at *2 (E.D. Mo. Nov. 28, 2012)("[u]nder Missouri law, the party resisting enforcement of a settlement 'bears the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted'")(quoting *Cameron v. Norfolk & W.Ry.,* 891 S.W.2d 495, 499 (Mo.Ct.App. 1994)).

> II. This Court Should Reject Defendants' Late Demand That Plaintiffs' Counsel Post Their Attorney's Fees As Insurance To Cover Health Systems' Risk Of Future Lawsuits.

This Court should reject Defendants' demand that Plaintiffs' counsel utilize the Class members' attorney fees to insure against Defendants' risk of future claims by those very same class members for two reasons: (1) the demand occurred months after the Parties' settlement

agreement and violates the terms of it, and (2) the demand creates a conflict of interest between Plaintiffs' counsel and the class members they represent.

On January 28, 2013, Defendants' counsel contacted Plaintiffs' counsel and proposed for the very first time a new settlement term which requires Plaintiffs to post their attorney's fees as insurance to cover Health Systems' legal fees and liability if they are sued over the next three years. Plaintiffs immediately rejected this new proposed settlement term and told Defendants' counsel that this late proposal violates the Parties settlement agreement regarding attorney fees. In fact, Defendants concede that it proposed this revised settlement term *after* the Parties had fully briefed Plaintiffs' Motion to Enforce Settlement Agreement, which means that Defendants first offered this proposal more than six months after the Parties agreed to the Term Sheet. (Doc. 228, at 3).

Defendants' argument that the mere fact that they made a tardy proposal to change the Parties' settlement shows the Parties were still negotiating the scope of the release is ludicrous and flies in the face of Plaintiffs' Motion to Enforce in which Plaintiffs clearly articulate that the Parties have a settlement. *Id.* Remarkably, Defendants suggest they are "willing to concede on the release of these claims if, and only if, Plaintiffs are willing to make concessions in other areas (i.e. holding back a portion of their counsel's attorney's fees to ensure that no claims are actually asserted)." *Id.* Really? Defendants are "willing to concede" that they will follow basic FLSA law that claimants release their FLSA claims only if they opt-in? The notion that class members must put up their attorney fees so that Defendants will comply with the law is absurd.

Furthermore, Defendants' proposal that class members' attorney fees insure against Defendants' future litigation costs and exposure creates an unavoidable conflict of interest between Plaintiffs' counsel and the class. Under Defendant's proposal, if Plaintiffs' counsel zealously advocated for an employee who claims that Defendants wrongfully paid her after the

4

settlement release date, and obtained a settlement or judgment, then Defendants would seek payment for their liability and attorney fees from the attorney fees the class (and Plaintiffs' counsel) received in settlement of this case. This creates an obvious conflict of interest that Plaintiffs' counsel must avoid. *See* Mo. Sup. Ct. Rules 4-1.7, 7-1.9.

Simply, this case settled months ago. The fact that Defendants "may now be unhappy with some or all of the terms . . . the fact that [Defendants] decide after the fact that a contract is not to [their] liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation." *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.,* 347 F.3d 1052, 1055 (8th Cir. 2003).

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court issue an order which enforces the Parties' settlement, requires Defendants to timely execute settlement documents memorializing the terms set forth in the July 20, 2012 Term Sheet, sets a date for the Parties to seek preliminary approval of the settlement, and for such other relief as this Court deems appropriate.

Respectfully submitted,

**ROWDY MEEKS LEGAL GROUP LLC**

*/s/ Tracey F. George*
Rowdy B. Meeks, MO #48349
Tracey F. George, MO #52361
**Rowdy Meeks Legal Group LLC**
435 Nichols Rd., Suite 200
Kansas City, Missouri 64112
Tel: (816) 977-2740
Fax: (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
Tracey.George@rmlegalgroup.com
www.rmlegalgroup.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically filed this 14th day of February, 2013, with the Clerk of Court and therefore served via the Court's electronic filing system on the following counsel of record:

Michael E. Kaemmerer
Brian E. McGovern
Kristen L. Maly
Bryan M. Kaemmerer
400 South Woods Mill Road, Suite 250
Chesterfield, MO 63017-3481
(314) 392-5200
(314) 392-5221 (fax)
mkaemmerer@mlklaw.com
bmcgovern@mlklaw.com
kmaly@mlklaw.com
bkaemmerer@mlklaw.com

/s/ Tracey F. George
**ATTORNEYS FOR PLAINTIFFS**