**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JADE MCCLEAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | No. 11-03037-CV-S-DGK |
| | ) | |
| HEALTH SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING PRELIMINARY APPROVAL OF SETTLEMENT**

This case involves a wage and hour dispute. Defendant Health Systems, Inc. ("HSI")
operates a number of nursing home facilities throughout the state of Missouri. Plaintiffs Jade
McClean and Jamie Davis (collectively "Plaintiffs") worked at Defendant Forsyth Manor, Inc.
("Forsyth"), one of HSI's facilities. Plaintiffs allege that during their employment, HSI and
Forsyth (collectively "Defendants") required them to work uncompensated meal breaks,
employed an illegal time rounding system, and willfully failed to pay them overtime
compensation. Plaintiffs, on behalf of themselves and a class of fellow employees, are suing
Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the Missouri
Minimum Wage and Maximum Hour Law ("MMWL"), Mo. Rev. Stat. 290.500 et seq., and
Missouri common law.

Now before the Court is the parties' joint motion for preliminary approval of a class
settlement (Doc. 247). The parties seek Court approval of a comprehensive settlement ("the
Settlement") consisting of (1) a FLSA collective action "opt-in" settlement and (2) a Rule 23
"opt-out" class action settlement. For the reasons discussed below, the motion is DENIED
WITHOUT PREJUDICE.

## Background

### A.  The procedural and factual history of the case.

Plaintiffs allege that Defendant HSI employed three practices which deprived its employees of their overtime wages through: (1) a time-keeping system that unlawfully rounded away time worked before and after each shift ("Rounding Claim"); (2) a uniform, system-wide policy that automatically deducted a thirty-minute meal period from each employee's pay for shifts of six hours or more regardless of whether the employee actually took a meal break or worked through the meal period ("Meal Break Claim"); and (3) a policy of willfully failing to include non-discretionary bonus payments into overtime calculations ("Overtime Claim").  To recover for these allegedly unlawful policies, Plaintiffs filed a four-count lawsuit (Doc. 51) asserting (1) a FLSA collective action claim for failure to pay overtime wages; (2) a Rule 23 class action claim for violations of the MMWL for failure to pay overtime wages; (3) a Rule 23 class action claim for breach of contract for unpaid straight time that is not recoverable under the FLSA or MMWL; and (4) a Rule 23 class action claim for unjust enrichment for unpaid straight time that is not recoverable under the FLSA or MMWL.

This case has a complicated procedural history. On December 12, 2011, the Court conditionally certified a FLSA collective action on the Rounding, Meal Break, and Overtime Claims (Doc. 159).  The certified class included "[a]ll current and former hourly employees of HSI-managed facilities who were employed during the last three years." (Doc. 159 at 17).  The Court also ordered FLSA class counsel Rowdy Meeks Legal Group ("FLSA Class Counsel") to send notice to the 18,000 putative collective action members.  Following receipt of the notice, 3,100 then-current and former employees opted into the collective action.

As for the MMWL and Missouri common law claims (Counts 2-4), on February 23, 2012, the Court granted in part Plaintiffs' motion for class certification. The Court certified the following class for Count II (MMWL violations), with regard solely to the Rounding and Overtime Claims: "All hourly, non-exempt employees who worked in an HSI-managed facility since January 25, 2009." (Docs. 174, 190).[1] The Court also certified the following class for Counts III and IV (Breach of Contract and Unjust Enrichment), with regard solely to the Rounding and Overtime Claims: "All hourly, non-exempt employees who worked in an HSI-managed facility since January 25, 2006." (Docs. 174, 190).[2] In this same order, however, the Court found that the Meal Break Claim failed to satisfy Rule 23(b)(3) and denied certification of it (Doc. 174 at 10-12).

The Court then stayed the case while the parties sought to settle this dispute. After a second mediation on August 21, 2013, the parties reached the Settlement (Doc. 245).

After initially reviewing the Settlement, the Court highlighted several potential deficiencies and requested supplemental briefing (Doc. 251). In response, the parties clarified or amended several Settlement provisions (Docs. 252, 254).

**B. A summary of the Settlement.**

As amended by the parties' most recent filings (Docs. 247-1, 254-1), the Settlement provides as follows. It consists of two settlements, an FLSA collective action settlement ("FLSA Portion") and a Rule 23 settlement of the MMWL and common law claims ("Rule 23 Portion") (Doc. 247-1 at 4). For the FLSA Portion, the parties identify the class as the 3,100 members who

---

[1] The date specified in the original order granting conditional certification (Doc. 174) was later modified by a subsequent court order (Doc. 190).

[2] The date specified in the original order granting conditional certification (Doc. 174) was later modified by a subsequent court order (Doc. 190).

initially opted in (the "FLSA Opt-In Plaintiffs").  As for the Rule 23 class (the "Rule 23 Class"), the parties anticipate it will include 22,085[3] current and former employees, excluding the 3,100 FLSA Opt-In Plaintiffs (Doc. 248 at 2).  The parties propose the Rule 23 Class be defined as:

> All hourly, non-exempt employees who worked at any HSI-managed facility at any time from September 30, 2008 to October 7, 2013.

(Doc. 248 at 2).

The Settlement does not place a cap on the potential recovery, but the parties estimate that Defendants' total financial exposure will be around $5,800,000 (Doc. 252 at 6).  HSI has agreed to not object to Plaintiffs' attorneys' fees as long as they do not exceed $1,670,000 inclusive of costs and expenses, and the Court ultimately determines the reasonableness of the fee request under the lodestar method (Doc. 247-1 at 8).  Name Plaintiffs, as class representatives, will each receive an award not to exceed $5,000, and the eight FLSA collective action plaintiffs who sat for a deposition will each receive an award not to exceed $500. *Id.*  The Court may, however, lower these amounts.  *Id.* at 8-9.  Defendants will also pay $116,634 in settlement administration costs (Doc. 248 at 7).

### 1.  The FLSA Portion.

Under the Settlement, FLSA Opt-In Plaintiffs will receive "an amount equal to (1) 25% of their scheduled meal breaks during the period beginning January 25, 2006 and ending on [October 7, 2013] ("FLSA Payment Period"), (2) 30% of net minutes rounded away from their time worked during the FLSA Payment Period, and (3) 100% of overtime pay denied as a result of the July 2010 Retro Payment being excluded from regular rate of pay." (Doc. 248 at 6).  They will automatically receive a check totaling these amounts from the claims administrator (the

---

[3] In the Suggestions in Support (Doc. 248), the parties estimated the class to be around 25,500 current and former employees, but in their most recent briefing they decreased their estimation to 22,085 (Doc. 252, at 4).

"Administrator"), but FLSA Class Counsel—not the Administrator—is responsible for apprising them of the Settlement. *Id.* at 18. The proposed notice form proffered by FLSA Class Counsel does not mention the Rule 23 class action (Doc. 252-4), but the Settlement compromises all of FLSA Opt-In Plaintiffs' claims, including their state law claims.

### 2. The Rule 23 Portion.

Each Rule 23 class member ("Rule 23 Class Member") who does not opt out *and* who returns a signed claim form with all boxes checked will receive "(1) 20% of their scheduled meal breaks during the five-year period ending [October 7, 2013] ('Rule 23 Payment Period'), (2) 30% of net minutes rounded away from their time worked during the Rule 23 Payment Period, and (3) 100% of overtime pay denied as a result of the July 2010 Retro Payment being excluded from the regular rate of pay." (Doc. 248 at 6).

This is a "claims-made" settlement which premises a claimant's recovery upon signing and returning the provided form (Doc. 247-1 at 15-17). By simply signing and returning the form, the claimant ("Rule 23 Claimant") will receive his or her unpaid overtime (Doc. 252-2). In order to recover for the unpaid meal breaks and rounding time, the Rule 23 Claimant must check additional boxes indicating that she was subjected to these policies. *Id.*

The Rule 23 Claimant must return the claim form within 60 days of the notice mailing (Doc. 247-1 at 18). Signing the claim form releases all state *and all federal* (including FLSA) claims arising from this wage and hour dispute (Doc. 248 at 8). If a Rule 23 Class Member prefers not to participate, she may opt out according to the procedures specified in the notice. *Id.* Doing so will allow her to maintain her federal and state law claims. *Id.* If the Rule 23 Class Member does not opt out of the agreement and does not return a claim form, then she receives no

share of the settlement and she will release *only* her state law claims. *Id.* The Rule 23 Class Member is not given the opportunity to settle her state law claims, but retain her FLSA claims.

The Administrator is responsible for finding the Rule 23 Class Members' addresses, sending Rule 23 notice, calculating the amounts due each Rule 23 Claimant, and distributing the checks to them (Doc. 247-1 at 15-21). In the event that a Rule 23 Claimant or FLSA Opt-In Plaintiff fails to cash her check within 180 days of issuance, it will be voided and the unpaid amount will go to the Missouri Unclaimed Property Fund in her name (Doc. 247-1).

**Standard**

**A. The standard governing court approval of a FLSA collective action.**

A valid settlement of an FLSA claim requires Department of Labor or court approval. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). "To approve an FLSA settlement, the Court must find that: (1) the litigation involves a bona fide wage and hour dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains an award of reasonable attorneys' fees." *Hill v. World Wide Tech. Holding Co.*, No. 4:11CV02108-AGF, 2012 WL 5285927, at *1 (E.D. Mo. Oct. 25, 2012) (internal quotation marks and citation omitted). To determine whether an FLSA settlement is fair and equitable, courts use many of the same factors used in evaluating a proposed Rule 23 class action settlement, including: (1) at what stage of the litigation the settlement was reached, and the complexity, expense, and likely duration of the remaining litigation; (2) how the settlement was negotiated, *i.e.*, whether there are any indicia of collusion; (3) class counsel, the parties, and the class members' opinions about the settlement; and (4) whether the present value of the settlement outweighs the potential recovery after continued litigation. *See id.*; *Sanderson*

*v. Unilever Supply Chain, Inc.*, No. 4:10-CV-0775-FJG, 2011 WL 5822413, at *2 (W.D. Mo. Nov. 16, 2011).

### B. The standard governing court approval of a Rule 23 settlement.

Federal Rule of Civil Procedure 23(e)(1)(A) mandates judicial review of any "settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." "[T]he district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). In determining whether a settlement is fair, adequate, and reasonable, a district court is required to consider four factors: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id.* at 933 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999). Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation. *Id.* at 932. The settlement's proponents bear the burden of developing the record and proving that the settlement is fair, reasonable, and adequate. *See In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350-51 (3d Cir. 2010).

### Discussion

As a preliminary matter, the Court commends the parties for seeking to amicably resolve this highly contentious case. The Court is mindful that the parties reached this resolution only after years of litigation and several mediation sessions. On a whole, the Settlement adequately compromises the parties' respective positions. The overall settlement amount appears fair and

reasonable, the class representative and FLSA deponent awards appear reasonable, and the claims administration process is adequate.

The Court, however, cannot approve the Settlement because the way it extinguishes claims violates the current and putative plaintiffs' due process rights. Because this problem extends beyond what the Court may reasonably correct through minor amendments, the Court must deny the parties' motion.

## I. The Settlement contains an overbroad claims extinguishment provision.

The Court previously questioned how the releases operated (Doc. 251, at 3-4) and requested supplemental briefing on this and other issues. Although the parties' supplemental briefing alleviated the Court's other concerns, it did not resolve the release of claims issues.

### A. The Settlement forces the FLSA Opt-In Plaintiffs to release their state law claims without ever receiving notice and a chance to opt out.

Paragraph 8 of the Settlement states, "Upon the Court entering a Final Order Approving Settlement, Rule 23 Claimants and FLSA Opt-In Plaintiffs will release all federal and state law wage and hour claims against Defendants…." (Doc. 247-1 at 19). While it is permissible for the Settlement to extinguish the FLSA Opt-In Plaintiffs' FLSA claims, the Court is troubled by the extinguishment of their state law claims.

In December 2011, the Court conditionally certified a FLSA collective action class which included 18,000 then-current and former employees. These individuals received a Court-approved notice and consent to join form that *only* discussed the *FLSA* lawsuit and the putative plaintiffs' *FLSA* rights. For instance, the subject line of the notice conspicuously stated: "OVERTIME CLAIMS under the Fair Labor Standards Act lawsuit." (Doc. 127-12 at 1). The introduction read: "The purpose of this Notice is to: (i) inform you of the existence of a collective action against Health Systems, Inc. and the facilities it manages (referred to as 'HSI')

for overtime compensation alleging violations of the Fair Labor Standards Act ('FLSA')...." *Id.* To join the FLSA collective action, a putative plaintiff had to sign a form that stated: "I...hereby consent to be a party plaintiff in the above-captioned lawsuit (or, if due to unforeseen procedural matters, any subsequent related suit), which is an action to recover minimum wage and overtime compensation not paid pursuant to the requirements of the *Fair Labor Standards Act.*" (Doc. 168-1) (emphasis added).

Neither the notice form nor the consent to join form conspicuously mentions any potential state law claims related to Defendants' practices. By joining the lawsuit, the 3,100 FLSA Opt-In Plaintiffs gave FLSA Class Counsel the authority to compromise their FLSA claims, not their state law claims. Thus, the Settlement's provision, which extends to the state law claims, extinguishes claims that FLSA Class Counsel had no authority to settle.

In defense of this provision, the parties contend that the FLSA Portion compensates the FLSA Opt-In Plaintiffs not only for their FLSA claims, but also for their state law claims. In particular, they contend that "although the FLSA has only a three year statute of limitations, the FLSA Opt-In Plaintiffs will receive compensation going back five years prior to the filing of the Complaint—for a total of 7 ½ years." (Doc. 252 at 8).

Even though they are compensated for their state law claims, this does not remedy the lack of notice and consent. If the Court approved the Settlement in its current form, the FLSA Opt-In Plaintiffs would release their state law claims despite never receiving notice of the Rule 23 class action or being afforded the opportunity to opt out of it. This would violate their due process rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (noting that notice and an opportunity to opt out are essential due process rights in Rule 23 class actions). Accordingly, if the parties wish to extinguish the FLSA Opt-In Plaintiffs' state law claims, it

must give them the same notice and rights afforded the Rule 23 Class Members. This means the FLSA Opt-In Plaintiffs must, at a minimum, receive notice of the Rule 23 class action and an opportunity to opt out of the action.

**B. The Rule 23 Claimants release federal law claims without receiving sufficient notice.**

The problem with the release of claims provision as it pertains to the Rule 23 Claimants is more nuanced than the above issue. Under the Settlement, a Rule 23 Claimant releases her state and federal claims by returning the signed claim form. As discussed in the request for supplemental briefing (Doc. 251 at 3), the Court was concerned that the extinguishment of FLSA claims through a Rule 23 class action indirectly contravened the opt-in requirements under 29 U.S.C. § 216(b).

Relying on federal district court opinions from other circuits, the parties contend the release of claims provision does not contravene 29 U.S.C. § 216(b), which states that an employee must file a written consent with the court to join in a FLSA action. According to the parties, the Rule 23 Claimants satisfy this requirement by returning the signed claim form. Moreover, to address the Court's prior concerns, the parties amended the language on the claim form to state: "By signing below, I verify that *I give my consent and opt into* the Settlement Fund. I agree and understand that if the proposed Settlement is approved by the Court and becomes effective, then I will release any and all federal and Missouri state wage and hour claims…." (Doc. 252-2) (emphasis added).

Some courts have found that a Rule 23 claim form also satisfies the FLSA opt-in requirements. *See, e.g.*, *La Parne v. Monex Deposit Co.*, No. 08-0302-DOC, 2010 WL 4916606, at *3 (C.D. Cal. Nov. 29, 2010) ("The following class members will be deemed to have opted in for purposes of a release of FLSA liability: those who opted into the FLSA action during the

initial opt-in period and those who file claims under the Settlement."). In those cases, however, the notice and claim forms conspicuously stated *what* federal rights the claimants released by returning the claim form. For instance, in *La Parne*, the release of claims provision extensively discussed the difference between the federal and state law claims. Proposed Settlement Notice, *La Parne v. Monex Deposit Co.*, No. 08-cv-00302-DOC-MLG, Doc. 183 at 6 (C.D. Cal. Nov. 11, 2010). And the notice clearly stated the federal claims included those asserted under the FLSA. *Id.* It further defined the FLSA class as those who opted in during the original opt-in period and those who submitted a Rule 23 claim form. *Id.*

By contrast, here, the notice lacks any mention of *what* federal claims the Rule 23 Claimants are releasing and how the Rule 23 class action relates to the FLSA collective action. Given the procedural history of this case, this information is pertinent for the Rule 23 Claimants to make an informed decision. Many of the putative 22,085 Rule 23 Class Members were also a part of FLSA collective action class that received notice in 2011. Out of the 18,000 putative collective action members who received notice in 2011, only 3,100 joined the FLSA collective action. The remaining 14,900 elected to retain their FLSA rights by not joining the collective action. Without providing a more thorough discussion of the FLSA collective action vis-à-vis the Rule 23 class action, these individuals may be confused about (1) why they are receiving a second notice, and (2) why they are required to release their federal rights to receive compensation for their state law claims. And the parties' recent addition of the language "I give my consent and opt into the Settlement Fund" will not ameliorate this potential confusion.

Consequently, if the parties insist on releasing the Rule 23 Claimants' FLSA claims, they must include a more conspicuous discussion of the difference between the state and federal

claims, an explanation of the relationship between the two actions, and a more specific statement of the precise claims released by returning a claim form.

**II.     The parties should make any future settlement agreement available to the Rule 23 Class Members and the FLSA Opt-In Plaintiffs.**

Another issue that merits discussion is the parties' failure to make the Settlement available for current and putative plaintiffs to review. The parties should establish a website or provide some other vehicle through which these individuals may review any future agreements.

**Conclusion**

Because the extinguishment of claims provision violates the current and putative plaintiffs' due process rights, the Court DENIES the parties' motion (Doc. 247). The Court reiterates, however, that on a whole the settlement terms, including the overall compensation, are quite reasonable. With that in mind, the Court is confident that the parties can reach a new agreement with similar terms but better notice.

**IT IS SO ORDERED.**

Date:     August 11, 2014               /s/ Greg Kays
                                        GREG KAYS, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT